## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**MARK ANDREW KING,**

       Petitioner,

    **v.**                         **CIVIL ACTION NO.  2:17cv281**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

       Respondent.

### REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Mark Andrew King's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("the Respondent") Motion to Dismiss, ECF No. 5. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED,** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's criminal history is significant for various larceny and grand larceny convictions in and around the Commonwealth of Virginia.  The instant Petition arises out of proceedings related to such convictions.

On June 21, 2011, in the Circuit Court for Colonial Heights, Virginia ("Trial Court"), Petitioner pleaded guilty to one count of grand larceny committed on or about February 7, 2011 in Case No. CR11-159-01. The Trial Court sentenced Petitioner to twenty years of incarceration with nineteen years and six months suspended, gave him credit for time served, and placed him on indefinite supervised probation. ECF No. 1 at 24, 84.  Although the Trial Court's subsequent sentencing decisions in Case No. CR11-159-01 are the subject of the instant federal Petition, it is necessary to detail Petitioner's post-June 21, 2011 contacts with the criminal justice system in other jurisdictions, as this chronology is essential to understanding Petitioner's claims.

On or about September 29, 2011, Petitioner was arrested by Westmoreland County Police and charged with a probation violation on a felony offense.  ECF No. 1 at 87.  According to Petitioner, on or about January 24, 2012, Petitioner was released from custody and called Parole and Probation to check in, but never physically met with a probation agent.  ECF No. 1 at 16. On June 22, 2012, Petitioner was found guilty as charged and the Westmoreland County Circuit Court revoked one year and six months of a previously suspended sentence.  ECF No. 1 at 87. On or about February 15, 2013, Petitioner was arrested by Stafford County Police and charged with a total of eight conspiracy, grand larceny, and larceny-related charges, six of which would later be nolle prossed.  On May 16, 2013, the Stafford County Circuit Court found Petitioner guilty of two counts of grand larceny and sentenced him to five years of incarceration with four years suspended. ECF No. 1 at 87.

2

On July 3, 2013, Chesterfield Parole and Probation submitted a Major Violation Report ("the Report") to the Trial Court detailing Petitioner's various arrests and convictions subsequent to his release from custody after serving the Trial Court's six month sentence. *See* ECF No. 1 at 86-87. The Report suggested that the Trial Court issue a capias for Petitioner and that he be returned to show cause why the Trial Court should not impose Petitioner's previously suspended sentence. ECF No. 1 at 87. The Trial Court accepted that recommendation and issued a Show Cause Order on July 12, 2013, directing the Clerk's Office to issue a capias for the arrest of Petitioner and that when serving a copy of such Show Cause Order upon Petitioner, that he also be served with "a copy of the probation letter dated July 3, 2013, outlining the probation violations.'" Trial Court Record at 85.

On September 24, 2013, Petitioner appeared with court-appointed counsel Ms. N. Kyle Wilkinson ("Trial Counsel") before the Trial Court for a Revocation Hearing. ECF No. 1 at 24. During the hearing, no probation agent appeared, but the Trial Court, upon the Commonwealth's motion, and without objection of Trial Counsel, received the Report into evidence. ECF No. 1 at 24. *See also* Transcript of September 24, 2013 Revocation Hearing at 4:6-13 ("The Court: Mr. Collins, are you asking the court to receive the Chesterfield Probation and Parole Violation Report as Commonwealth's Exhibit No. 1? Mr. Collins: Yes, Judge."). At the time of this September 24, 2013 hearing, Petitioner had two years and seven months left to serve for his convictions in Stafford County Circuit Court and the Show Cause for the probation violation in Westmoreland County. *See* Transcript of September 24, 2013 Revocation Hearing at 6-7. Due to Petitioner's February 13, 2012 grand larceny conviction in Stafford County Circuit Court,[1] the Trial Court revoked part of Petitioner's suspended sentence. Such revocation  proceeding re-

---

[1] *See* ECF No. 1 at 24 ("Counsel for the Commonwealth and [Petitioner] agreed that the new offense date for this grand larceny was February 13, 2012.")

3

imposed the remaining nineteen years and six months, but suspended fourteen years and six months, requiring Petitioner to serve five years of active incarceration, to run consecutively with all other sentences. ECF No. 1 at 1, 73. *See also* Trial Court Record at 96 ("Show Cause Revocation Order"). This sentence was announced on September 24, 2013, but not memorialized and entered as a Final Order by the Trial Court until January 24, 2014. ECF No. 1 at 22, 84-85.[2]

On October 30, 2013, after the revocation hearing but before the Trial Court's Final Order was entered, Petitioner filed a written motion to the Trial Court requesting that the revocation be appealed. ECF No. 1 at 22. On March 21, 2014, Paul S. Roskin, Esq. ("Appellate Counsel") was appointed as appellate counsel for Petitioner. ECF No. 1 at 19-29. In or around May 2014, Appellate Counsel filed an *Anders* brief in the Court of Appeals of Virginia on behalf of Petitioner.[3] Therein, Petitioner, by and through Appellate Counsel, argued that "despite his past misconduct, including his new larceny conviction, the [Trial Court] should have considered the time he already had served, as well as the fact that his mother had recently died, and not

---

[2] Additionally, on or about December 11, 2013, Petitioner filed a Writ of Error in the Trial Court seeking a dismissal of the Trial Court's Final Order revoking Petitioner's suspended sentence. ECF No. 1 at 16-17. On February 4, 2014, the Trial Court entered an Order denying Petitioner's Motion for a Writ of Error. ECF No. 1 at 18 ("The Court having reviewed the file and the motion of the defendant for writ of error; the motion is hereby denied.").

[3] In *Anders v. California*, 386 U.S. 738 (1967), the Supreme Court observed that in many cases, when counsel is appointed to represent an indigent defendant on appeal he or she determines that no meritorious grounds for appeal exist and requests that the court permit him or her to withdraw, and "held that, in order to protect indigent defendants' constitutional right to appellate counsel, courts must safeguard against the risk of granting such requests in cases where the appeal is not actually frivolous." *Smith v. Robbins*, 528 U.S. 259, 264 (2000) (citing *Anders v. California*, 386 U.S. 738 (1967)). The *Anders* Court set out a procedure by which appellate counsel and courts should follow when confronted with such a circumstance. *See Anders*, 386 U.S. at 744 ("Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.").

4

ordered him to serve an additional five years [for his new larceny convictions]." ECF No. 1 at 26. By written Order dated September 30, 2014, the Court of Appeals of Virginia denied Petitioner's appeal, finding "the case to be wholly frivolous." ECF No. 1 at 35. This finding was informed by essentially three points. First, the Court of Appeals found that pursuant to Virginia Code Section 19.2-306(A), the Trial Court "'undoubtedly has the power to revoke [the suspension of a sentence] when the defendant has failed to comply with the conditions of the suspension.'" ECF No. 1 at 36 (quoting *Russnak v. Commonwealth*, 10 Va. App. 317, 321, 392 S.E.2d 491, 493 (1990) (quoting *Griffin v. Cunningham*, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964)) (alteration in original). Second, a sentencing court's revocation of a suspended sentence "'will not be reversed unless there is a clear showing of abuse of discretion.'" ECF No. 1 at 36 (quoting *Keselica v. Commonwealth*, 34 Va. App. 31, 35, 537 S.E.2d 611, 613 (2000) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86, 402 S.E.2d 684, 687 (1991))). The Court of Appeals found that Petitioner failed to establish that the Trial Court abused its discretion in revoking part of the previously suspended sentence, especially in light of the fact that "the evidence [was] uncontroverted that [Petitioner] violated the conditions of the suspension when he was convicted of grand larceny while on probation." ECF No. 1 at 36. Additionally, the Court of Appeals found that Petitioner improperly endeavored to pursue claims of ineffective assistance of Trial Counsel through direct appeal. ECF No. 1 at 36. *See also Baker v. Clarke*, 95 F. Supp. 3d 913, 918 (E.D. Va. 2015) ("[I]t is clear that Virginia law requires that all claims of ineffective assistance of counsel be raised on collateral review.") (citing *Lenz v. Commonwealth*, 261 Va. 451, 460, 544 S.E.2d 299, 304 (2001) (internal citations omitted) ("Claims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal."); *Browning v. Commonwealth*, 19 Va. App. 295, 297

5

n.2, 452 S.E.2d 360, 362 n.2 (1994) (stating that a portion of the Virginia Code allowing certain ineffective assistance claims to be raised on direct appeal was repealed in 1990)).

After Petitioner indicated that he wished to seek review of this denial, Appellate Counsel was reappointed to represent Petitioner in a further appeal of the matter to the Supreme Court of Virginia. ECF No. 1 at 42. On or about January 6, 2015, Appellate Counsel filed a Petition for Appeal in the Supreme Court of Virginia on behalf of Petitioner, once again relying on *Anders v. California*, and reiterating Petitioner's previous argument that the Trial Court wrongly revoked five years of Petitioner's previously suspended sentence. ECF No. 1 at 38-49. On September 15, 2015, the Supreme Court of Virginia issued a written Order finding that Appellate Counsel had complied with *Anders v. California*, granting Appellate Counsel's motion to withdraw as counsel, and denying Petitioner's appeal. ECF No. 1 at 61 ("The Court, upon further consideration of the entire record, finds no legal issues arguable on their merits and therefore refuses the petition for appeal without appointment of additional counsel.").

On or about November 9, 2015, Petitioner filed a written motion seeking to modify or vacate the sentence he received on September 24, 2013. ECF No. 1 at 62-71.[4] On November 16, 2015, the Trial Court entered an Order denying Petitioner's motion to modify his sentence. *See* ECF No. 1 at 72.

On April 18, 2016, Petitioner filed a *pro se* petition for a writ of habeas corpus in the Supreme Court of Virginia, attacking the validity of the Trial Court's September 24, 2013 revocation decision and the events that followed. Therein, Petitioner asserted three claims: (1) Petitioner was denied due process; (2) revocation hearing counsel was ineffective; and (3) appellate counsel was ineffective. ECF No. 7 at 2. On August 16, 2016, the Supreme Court of

---

[4] The Certificate of Service page attached to Petitioner's motion to vacate and filed in support of the instant Petition is devoid of a month and date designation. *See* ECF No. 1 at 71. However, in a later filing by Petitioner, he provides November 9, 2015 as the date of this motion to vacate. *See* ECF No. 1 at 81.

Virginia denied and dismissed Petitioner's April 18, 2016 petition for a writ of habeas corpus as untimely. *See* ECF No. 1 at 79. Specifically, the Supreme Court of Virginia found the state habeas petition to be untimely because it was not filed within one year after Petitioner's revocation order became final. ECF No. 1 at 79 (citing *Booker v. Dir. of Dep't of Corr.*, 284 Va. 6, 6, 727 S.E.2d 650, 651 (2012) ("explaining "[t]he limitation period for habeas corpus petitions challenging revocation hearings is one year after the cause of action accrues") (internal citation omitted); Va. Code Ann. § 8.01-654(A)(2) ("A petition for writ of habeas corpus ad subjiciendum, other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues. A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.")).

While not explicitly articulated by the Supreme Court of Virginia's written decision, Petitioner's state habeas petition was deemed untimely pursuant to the ***first half*** of Section 8.01-654(A)(2), which provides that "[a] petition for a writ of habeas corpus ad subjiciendum, other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues," as opposed to the *second half* of the provision, which provides that "[a] habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." § 8.01-654(A)(2)). Petitioner sought to challenge the Trial Court's January 24, 2014 Order revoking his previously suspended sentence (rather than the underlying conviction or original sentence), therefore, his state habeas action was a petition for "a writ of

7

habeas corpus ad subjiciendum," and therefore governed by the first half of the provision, providing just one year from the entry of the January 24, 2014 revocation order as the deadline for timely filing a state habeas petition. *See Booker v. Clarke*, No. 1:12CV1478(JCC/TRJ), 2013 WL 12099753, at *2 (E.D. Va. Feb. 19, 2013) (citing *Dunnivan v. Brown*, 2012 WL 830956 at *3 (W.D. Va. Mar. 7, 2012) (rejecting a claim that the Supreme Court of Virginia erred in finding a state habeas petition attacking a revocation order untimely pursuant to § 8.01-654(A)(2)); *Worley v. Johnson*, 2006 WL 982008 (W.D. Va. 2006) (noting Supreme Court of Virginia's dismissal of state habeas corpus challenge to probation revocation under one-year limitations period in § 8.01-654(A)(2))).

Sometime in September 2016, Petitioner, acting *pro se*, filed a petition for a rehearing, asking the Supreme Court of Virginia to set aside its August 16, 2016 denial of Petitioner's state habeas petition. *See* ECF No. 1 at 80-82.[5] On November 21, 2016, the Supreme Court denied Petitioner's request for rehearing. *See* ECF No. 1 at 83.

Petitioner filed the instant *pro se* § 2254 Petition for federal habeas relief, ECF No. 1, on April 30, 2017. Therein, Petitioner raised the following four grounds for federal habeas relief: (1) Petitioner's due process rights were violated because he was never placed under the supervision of a probation officer; (2) Petitioner's right to cross-examine witnesses against him was violated because no probation officer appeared before the Trial Court; (3) Petitioner's counsel in the revocation proceeding was ineffective for failing to properly investigate the allegation[6] against him and for failing to meet with him prior to the day of the revocation

---

[5] In support of his September 2016 petition for rehearing before the Supreme Court of Virginia, Petitioner concedes that he "recognizes he was sentenced to time for crimes that he did commit." ECF No. 1 at 81.
[6] The allegation for which Petitioner appeared before the Trial Court to show cause why his suspended sentence should not be revoked was his new convictions for grand larceny in Stafford County Circuit Court.

hearing; and (4) Petitioner's appellate counsel was ineffective for failing to consult with Petitioner prior to filing an *Anders* brief. ECF No. 1 at 5-11. *See also* ECF No. 7 at 2.

On October 2, 2017, Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and a *Roseboro* Notice. ECF Nos. 5-8. Petitioner filed a Response in Opposition on October 26, 2017. ECF No. 9. Therefore, the instant Petition and Motion to Dismiss are ripe and ready for recommended disposition.

## II. DISCUSSION

### A. Timeliness

As a threshold matter, Respondent argues that the instant Petition is not timely. ECF No. 7 at 3. The undersigned agrees.

#### 1. Statute of Limitations under the AEDPA

"On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ('the AEDPA')." *Gilmore v. Ballard*, No. 2:09-CV-00041, 2009 WL 6319261, at *1 (S.D.W. Va. Oct. 22, 2009), *report and recommendation adopted in part*, No. CIV.A. 2:09-00041, 2010 WL 1286891 (S.D.W. Va. Mar. 26, 2010). As Respondent notes, this case is governed by the limitation period set forth in the AEDPA. ECF No. 7 at 3. The applicable section of the AEDPA provides, in pertinent part, that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).   Section 2244(d)(2) of the AEDPA further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).   Therefore, Section 2254 petitions such as the instant Petition are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the expiration of the time to seek direct review of the highest state court's decision by the Supreme Court of the United States. *See* 28 U.S.C. § 2244(d)(1)(A).

### 2. The Petition is untimely.

In the instant matter, the Trial Court Order revoking Petitioner's suspended sentence was entered on January 24, 2014. ECF No. 1 at 84-85.[7] Petitioner timely appealed the Trial Court's Order, and the Court of Appeals of Virginia denied Petitioner's appeal on September 30, 2014. ECF No. 1 at 35-37.  Petitioner next appealed to the Supreme Court of Virginia, which refused his appeal on September 15, 2015.  ECF No. 1 at 61.  Therefore, Petitioner's revocation became final on December 14, 2015, which is the date that his time for challenging the Supreme Court of Virginia's decision (by seeking a petition for certiorari to the Supreme Court of the United States) expired. *See* U.S. Sup. Ct. R. 13(1) (petitions for Supreme Court review are timely filed

---

[7] On the signature and date page of the Sentencing Order, although it appears to have been signed by the Trial Court on January 24, 2014, there does appear to be a handwritten notation that says "nunc pro tunc 12/30/13." ECF No. 1 at 85.  However, neither Respondent nor any state court has made mention of this notation, and in any event, the result would be unchanged since this Court's consideration of timeliness is premised upon the date when Petitioner's time to pursue the final stage of direct appeal expired.

10

within 90 days of the entry of judgment by a state court of last resort); *see also Holland v. Florida*, 560 U.S. 631, 661 (2010) (Scalia, J., dissenting) ("In an ordinary case, the clock starts when the state-court judgment becomes final on direct review." (citing 28 U.S.C. § 2244(d)(1)(A)).[8] The instant Petition was signed on April 30, 2017, which is 503 days after the time for filing a federal habeas petition began to run on December 14, 2015, and consequently, 138 days beyond the 365 day deadline provided by the AEDPA.[9] Unless Petitioner is entitled to application of either statutory tolling or equitable tolling, the untimeliness of the Petition bars this Court's review of the same.

### 3. Petitioner is not entitled to statutory tolling.

As explained in Part II.A.1, *supra*, Section 2244(d)(2) of the AEDPA provides for tolling of the federal one year statute of limitations during the pendency of a "properly filed" state habeas petition. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

The undersigned finds that the benefits of statutory tolling (pursuant to 28 U.S.C. § 2244(d)(2)) are unavailable to Petitioner because the untimely filing of his state habeas petition means that such state petition was not "properly filed" within the one year AEDPA statute of

---

[8] Petitioner does not allege facts on which his federal filing period could be calculated under any other subsection of § 2244(d) than subsection (d)(1)(A). *See* 28 U.S.C. § 2244(d)(1)(A) (the one year limitation period begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").

[9] Although the Petition was received by the United States District Court for the Eastern District of Virginia in the Richmond Division on May 16, 2017, and not filed until May 26, 2017, the undersigned affords Petitioner the benefit of the "prison mailbox rule," which deems prisoner court filings to be "filed" as of the date that the documents are given to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) and Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. *See also Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *4 (E.D. Va. Sept. 8, 2016), appeal dismissed, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) ("For federal purposes, a pleading submitted by an incarcerated litigant acting *pro se* is deemed filed when it is delivered to prison officials for mailing.") (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

limitations.  In *Artuz v. Bennett*, the Supreme Court announced the definition of "properly filed," stating that:

> an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

*Artuz v. Bennett,* 531 U.S. 4, 8 (2000) (citations omitted).  As the Fourth Circuit has explained, "[i]n *Artuz,* the Supreme Court held that time limits on state petitions are 'condition[s] to filing,' and that an untimely petition would not be deemed 'properly filed.'" *Escalante v. Watson*, 488 F. App'x 694, 697 (4th Cir. 2012) (quoting *Artuz,* 531 U.S. at 11).  *See also Pace v. DiGuglielmo,* 544 U.S. 408, 410 (2005) (explaining that when determining whether a pleading filed in state court was "properly filed" for purposes of a federal time limit, state law typically governs).  Thus, "just because [an] application is pending, does not mean that it was properly filed.  For example, if an application is erroneously accepted by the clerk without the requisite filing fee, it will be pending, but not properly filed." *Escalante v. Watson*, 488 F. App'x 694, 697–98 (4th Cir. 2012) (quoting *Christian v. Baskerville,* 232 F. Supp. 2d 605, 607 (E.D. Va.), *cert. of appealability denied,* 47 F. App'x 200 (4th Cir. 2001) (unpublished) ("[W]e deny a certificate of appealability and dismiss the appeal on the reasoning of the district court.")).  *See also Dunnivan v. Brown*, No. 7:11CV00279, 2012 WL 830956, at *3 (W.D. Va. Mar. 7, 2012) ("A state *habeas* petition that was not timely filed under applicable state court procedural rules is not 'properly filed' under § 2244(d)(2), however, and cannot toll the federal *habeas* filing period.") (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 414 (2005)).

Here, direct review of Petitioner's case concluded on December 14, 2015, thus triggering the AEDPA's one year statute of limitations.  Petitioner's state habeas petition was filed on April

12

18, 2016, which was within the one year AEDPA period that commenced on December 14, 2015. However, because the Supreme Court of Virginia deemed the April 18, 2016 state petition untimely, it was not "properly filed" for the purposes of tolling the AEDPA's one year statute of limitations pursuant to 28 U.S.C. § 2244(d)(2)).  Having determined that statutory tolling is unavailable to Petitioner, the undersigned considers Petitioner's final refuge: equitable tolling.

4. Petitioner is not entitled to equitable tolling.

Respondent argues that Petitioner "has not raised any argument that he is entitled to equitable tolling. . . . Consequently, there is no basis to excuse his late filing." ECF No. 7 at 5. In the undersigned's estimation, Petitioner appears to respond to this argument in his Opposition to the Motion to Dismiss (ECF No. 9), and therefore, the undersigned is compelled to discuss the applicability of equitable tolling to excuse Petitioner's delay in seeking federal habeas relief.

While Petitioner does not specifically use the term "equitable tolling," he appears to contend that the untimely filing of this Petition was caused, in large part, by Deerfield Correctional Center institutional counsel, Wallace W. Brittle, Jr's provision of allegedly deficient legal advice regarding the deadlines for filing a habeas petition.  Notably, however, Petitioner does not specify whether this advice was in regards to federal versus state habeas petitions, or both.  In his Opposition to the Motion to Dismiss, Petitioner states

> [W]hile I was waiting to hear from the VA Court of Appeals, I scheduled an appointment with an institutional attorney.  I was being housed at Deerfield Correctional Center and during the spring of 2014, that institutional attorney met with me 4 times. This attorney's name is Wallace W. Brittle, Jr.[10]  I was advised by Mr. Brittle several times that I could not file a habeas corpus until the appeals process ran its course.  He explained to me that the courts would not accept a habeas corpus until the VA Supreme Court made a final ruling with my petition of appeal.  He actually told me I would have one year from the final ruling date to file the habeas corpus.

---

[10] Hereinafter "Institutional Counsel"

\*\*\*

September 15, 2015 – the VA Supreme Court ruled exactly as the VA Court of Appeals . . . . April 18, 2016 – now that the VA Supreme Court has ruled on my appeal and the appeal process has ran its final course, going on the legal advice given to me by Mr. Brittle, the institutional attorney, I filed a habeas corpus in the VA Supreme Court.

August 16, 2016 – I am notified by the VA Supreme Court that my motion for habeas corpus has been denied for having not been filed in a timely fashion. I immediately write a letter to the VA Supreme Court clerk explaining the timeline I had followed and the advice I was given from an institutional attorney. The clerk responds by letter informing me that I could refile by requesting for [sic] a reconsideration for the filing of the habeas corpus. This, [sic] too, was denied several weeks later.

\*\*\*

The Petitioner believes and was advised by the only legal counsel available that he could not file a habeas corpus until the VA Supreme Court made its final decision with his appeal. The Petitioner was advised by this attorney during the 4 visits in the spring of 2014.

ECF No. 9 at 3, 4-5, 6. In addition to the allegedly incorrect legal advice of Institutional Counsel and consequently, Petitioner's flawed understanding of relevant deadlines, Petitioner implores the Court to be mindful that Petitioner has no law degree or legal training, has been incarcerated (and transferred multiple times) for the duration of his pursuit of habeas relief, and that he has been actively fighting this case since October 2013. *See* ECF No. 9 at 1. Although inartfully articulated, in the undersigned's estimation, and affording *pro se* Petitioner the benefit of liberal construction, Petitioner's Opposition to the Motion to Dismiss appears to argue that the federal limitations period should be equitably tolled for the aforementioned reasons. *See Escalante v. Watson*, 488 F. App'x 694, 701 (4th Cir. 2012) (Davis, J., dissenting) ("[W]e "interpret the efforts of a *pro se* petitioner liberally.'") (quoting *Fields v. Atty. Gen. State of Md.*, 956 F.2d 1290, 1298 n.20 (4th Cir. 1992)); *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (acknowledging Fourth Circuit tradition that liberal construction is afforded to *pro se* pleadings).

14

Although the Supreme Court has made clear that "the timeliness provision in the federal habeas corpus statute is subject to equitable tolling, *Holland v. Florida*, 560 U.S. 631, 634 (2010) (citing 28 U.S.C. § 2244(d)), the undersigned finds that Petitioner fails to establish that such tolling should be applied to excuse his delayed filing of the instant Petition.

"To qualify for equitable tolling, a petitioner must demonstrate both that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). In the Fourth Circuit, that means "the petitioner is obliged to specify the steps he took in diligently pursuing his federal claim, and a lack of diligence generally acts to negate the application of equitable tolling." *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (citing *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)). "In addition, the petitioner must 'demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances.'" *Rashid v. Clarke*, No. 1:18CV262 (TSE/MSN), 2018 WL 1937349, at *3 (E.D. Va. Apr. 24, 2018) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

As an initial matter, the undersigned finds Petitioner's statement regarding Institutional Counsel, namely, that "[Institutional Counsel] actually told me I would have one year from the final ruling date to file the habeas corpus," to be dispositive of the issue of Petitioner's entitlement to equitable tolling. ECF No. 9 at 3. Based on that statement, it appears that Institutional Counsel did indeed advise Petitioner of the AEDPA's one year statute of limitations

15

as provided in 28 U.S.C. § 2244(d)(1)(A).  Assuming *arguendo*, that Petitioner was referring to Institutional Counsel's erroneous advice regarding the deadline to file a *state* habeas petition, the result is unchanged because "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling. . . . Stated differently, [Petitioner's] misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control."  *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's *own* ignorance or mistake does not warrant equitable tolling...."); *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a pro se prisoner's ignorance of the law warranted equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (same)).

Although Petitioner correctly observes that he "has been fighting this case since October 2013," the extended duration of a case, by itself, is not automatically tantamount to a diligent pursuit of the same.  The Supreme Court of Virginia denied Petitioner's request for a rehearing on his rejected state habeas petition by written Order dated November 21, 2016, *see* ECF No. 1 at 83, yet Petitioner did not seek federal habeas relief until nearly six months later, on April 30, 2017, *see* ECF No. 1 at 15.  Additionally, with respect to Petitioner's ineffective assistance of Trial and Appellate Counsel claims, the record makes clear that Petitioner was advised by the Court of Appeals of Virginia, as early as September 30, 2014, that "[c]laims of ineffective assistance of counsel may not be raised on direct appeal."  ECF No. 1 at 36 (rejecting claims of ineffective assistance of counsel asserted by Petitioner in a *pro se* supplemental appellate

16

petition). *See also Baker v. Clarke*, 95 F. Supp. 3d 913, 918 (E.D. Va. 2015) ("[I]t is clear that Virginia law requires that all claims of ineffective assistance of counsel be raised on collateral review.") (citing *Lenz v. Commonwealth*, 261 Va. 451, 460, 544 S.E.2d 299, 304 (2001) (internal citations omitted) ("Claims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal."); *Browning v. Commonwealth*, 19 Va. App. 295, 297 n.2, 452 S.E.2d 360, 362 n.2 (1994) (stating that a portion of the Virginia Code allowing some ineffective assistance claims to be raised on direct appeal was repealed in 1990)). Notably, Petitioner's Opposition to the Motion to Dismiss indicates that Petitioner received and read the September 30, 2014 Opinion. *See* ECF No. 9 at 4 (stating that "the VA Court of Appeals makes a decision with my appeal. . . .This decision was made on September 30, 2014. The VA Court of Appeal [sic] does not even look at my argument.").

Petitioner attempts to attribute his failure to timely pursue any habeas relief to Institutional Counsel's 2014 advice that he could not file a state habeas petition until the Supreme Court of Virginia made its final decision regarding Petitioner's appeal. *See* ECF No. 9 at 3 ("He explained to me that the courts would not accept a habeas corpus until the VA Supreme Court made a final ruling with my petition of appeal."). Such an attempt is unavailing, and especially with respect to the alleged ineffectiveness of Trial Counsel. In his Opposition to the Motion to Dismiss, Petitioner states that he met with Institutional Counsel four times, and Petitioner is explicit that all four of those meetings occurred in spring 2014. *See* ECF No. 9 at 6 ("The Petitioner was advised by [Institutional Counsel] during the 4 visits in the spring of 2014."). Thus, if the undersigned accepts as true Petitioner's chronology, namely, that all four meetings with Institutional Counsel occurred in the spring of 2014, then by the time the Court of Appeals of Virginia issued its September 30, 2014 decision (therein advising Petitioner that

17

ineffective assistance of counsel claims could *only* be raised on collateral review), any misguided advice allegedly provided by Institutional Counsel in spring 2014 was supplanted by the subsequent, unambiguous guidance of the state's second highest appellate court in late September 2014. On this record, Petitioner fails to meet the burden of proving that he exercised the due diligence prerequisite for the application of equitable tolling. *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (observing that "the petitioner bears the burden of proving that he exercised due diligence").

The undersigned's reluctance to find that Petitioner has demonstrated entitlement to equitable tolling is further informed by the Fourth Circuit's recognition that equitable tolling is to be applied only in rare circumstances. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) ("We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). Ultimately, Petitioner has failed to demonstrate that application of equitable tolling is warranted. To hold otherwise would run afoul of the Supreme Court's "historic limitation of equitable tolling to extraordinary circumstances beyond a petitioner's control." *Whiteside v. United States*, 775 F.3d 180, 187 (4th Cir. 2014). Accordingly, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** on the basis of Respondent's timeliness argument.

Although the undersigned's determination that the Petition was not timely filed provides sufficient grounds to grant the Motion to Dismiss, the undersigned will also address Respondent's second basis for dismissal of the Petition, namely, whether Petitioner's procedural default of his claims operates as a bar to review of the same on federal habeas review.

18

**B. Exhaustion and Procedural Default**

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and whether Petitioner has procedurally defaulted on his claims.

    1. Exhaustion

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Virginia Dep't of Corr.*, No. 1:14CV1581 (GBL/TCB), 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), appeal dismissed, 669 F. App'x 160 (4th Cir. 2016) (citing Duncan v. Henry, 513 U.S. 364 (1995)).

2. Procedural Default

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court recently observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). When considering a petition for federal habeas corpus, § 2254(d) mandates that a

20

state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)).

"Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781 (JCC/JFA), 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), cert. denied, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

 3. Petitioner's claims are effectively exhausted and procedurally defaulted.

 Here, as the Respondent notes, ECF No. 7 at 4-5, the Supreme Court of Virginia denied and dismissed Petitioner's state habeas petition pursuant to Virginia Code Section 8.01-654(A)(2), finding that because the petition was filed more than one year after Petitioner's revocation order was entered, the petition was not timely filed, *see* ECF No. 1 at 79 ("Upon consideration of the petition for a writ of habeas corpus filed April 18, 2016, the Court finds the petition was not filed within one year after petitioner's revocation. . . . Accordingly, the Court is of the opinion that the petition was not timely filed.") (citing *Booker v. Dir. of Dep't of Corr.*, 284 Va. 6, 6, 727 S.E.2d 650, 651 (2012); Va. Code Ann. § 8.01-654(A)(2)). *See also Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (explaining that the burden of pleading and proving that a claim is procedurally defaulted rests with the state) (citing cases). Thus, Petitioner failed to formally exhaust his state remedies as to the claims raised in the instant federal Petition and the time for doing so has expired. *See* Va. Code. Ann. § 8.01-654(A)(2). *But see Masika v. Chesapeake Circuit Court*, No. 3:16CV1006, 2018 WL 1079575, at *4 & n.5 (E.D. Va. Feb. 27, 2018) ("Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is 'technically met.'") (quoting *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996))). Therefore, in this procedural posture, Petitioner's claims are

simultaneously exhausted and procedurally defaulted. *See* ECF No. 7 at 5. As explained further herein, such a conclusion renders this Court unable to engage in federal habeas review regarding the merits of Petitioner's claims.

In the Fourth Circuit, it is well-established that "Virginia Code § 8.01–654(A)(2) constitutes an adequate and independent state-law procedural rule." *Baker v. Clarke*, 95 F. Supp. 3d 913, 917 (E.D. Va. 2015) (explaining that "a state procedural rule is 'adequate' if it is 'regularly or consistently applied by the state court,' and is 'independent' if its application does not depend on the federal Constitution") (citing *Williams v. French,* 146 F.3d 203, 209 (4th Cir. 1998)) (internal citations omitted). It is equally well-established that "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *Beard v. Kindler,* 558 U.S. 53, 55 (2009)). Accordingly, the Supreme Court of Virginia's August 16, 2016 branding of Petitioner's state habeas petition as untimely significantly constrains the scope of federal habeas review,

> as it is well settled that where, as here, a state court finds that a claim is procedurally defaulted based on an adequate and independent state-law ground, the claim may not be reviewed on the merits by a federal habeas court, "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"

*Baker v. Clarke*, 95 F. Supp. 3d 913, 917 (E.D. Va. 2015) (quoting *Harris v. Reed,* 489 U.S. 255, 262 (1989) (quoting *Murray v. Carrier,* 477 U.S. 478, 485, 495 (1986)); *Williams v. French,* 146 F.3d 203, 208–09 (4th Cir. 1998)) (internal citations omitted). Therefore, like the timeliness determination discussed in Part II.A, *supra*, Petitioner's salvation would lie, if at all, in whether he is "able to overcome [this] procedural default, and have his claims addressed on the merits, by

showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).[11]

### 4. Petitioner cannot overcome procedural default of his claims.

As noted in the preceding discussion, this Court may only consider the merits of Petitioner's procedurally defaulted claims if he can show cause and prejudice forth default, or that a fundamental miscarriage of justice would occur.  In response to Respondent's argument that Petitioner's claims are procedurally defaulted, Petitioner made no attempt to demonstrate any of these factors to overcome the procedural default of his claims.[12]

Accordingly, the undersigned **FINDS** that notwithstanding the untimeliness of the Petition, the claims raised in this Petition are also procedurally barred from federal review, thereby establishing a second basis for **RECOMMENDING** that Respondent's Motion to Dismiss be **GRANTED**.

---

[11] To be sure, whether Petitioner is entitled to equitable tolling of the AEDPA statute of limitations and whether Petitioner is entitled to equitable tolling to excuse the state law procedural default of his claims are two different inquiries. *See Holland v. Florida*, 560 U.S. 631, 650 (2010) (Alito, J., concurring) (explaining that *Coleman v. Thompson*, 501 U.S. 722 (1991) "was 'a case about federalism,' . . . in that it asked whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, notwithstanding the state court's determination that its own rules had been violated.  Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law") (citing *Coleman v. Thompson*, 501 U.S. 722, 726, 752–53 (1991); *Lawrence v. Florida*, 549 U.S. 327, 341 (2007) (Ginsburg, J., dissenting)) (internal citations omitted) (italics in original).

[12] For example, "[a] petitioner may avail himself of the 'fundamental miscarriage of justice' exception to the procedural default bar by proffering new, reliable evidence sufficient to support a claim of actual innocence." *Jefferson v. Clarke*, No. 2:16CV572, 2017 WL 3223935, at *9 (E.D. Va. July 5, 2017), *report and recommendation adopted*, No. 2:16CV572, 2017 WL 3222539 (E.D. Va. July 28, 2017), *appeal dismissed*, 707 F. App'x 145 (4th Cir. 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15, 324 (1995); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.")).  It is clear that Petitioner does not qualify for a "miscarriage of justice" exception such as actual innocence since Petitioner has previously conceded that he "recognizes he was sentenced to time for crimes that he did commit." ECF No. 1 at 81.

**C. Petitioner's claims lack merit.**

Even if the Petition did not suffer from the aforementioned infirmities of untimeliness and procedural default, Petitioner is not entitled to federal habeas relief because his claims lack merit.   Ultimately, the gravamen of Petitioner's claim is that Petitioner was never placed on probation, that the Trial Court should not have accepted the Report detailing Petitioner's violation of the same, and that the Trial Court (relying on such Report) should not have revoked any portion of Petitioner's previously suspended sentence.   These claims are meritless.

Despite a wealth of federal and state law to the contrary, Petitioner insists that, under Virginia Code Section 19.2-306(A), the Trial Court could not revoke his suspended sentence because he had yet to begin to serve his term of probation.   Virginia's appellate courts have declined to accept this argument.   *See, e.g., Grueninger v. Dir.*, No. 3:15CV169, 2016 WL 438974, at *3 (E.D. Va. Feb. 3, 2016) (observing that this argument was rejected by both the Court of Appeals of Virginia and the Supreme Court of Virginia prior to the court's federal habeas review) (citing Va. Code Ann. 19.2-306(A) (stating that the Circuit Court may revoke any portion of a suspended sentence "for any cause the court deems sufficient that occurred at any time within . . . the period of suspension fixed by the court"); *Booker v. Commonwealth*, 61 Va. App. 323, 337–38, 734 S.E.2d 729, 736 (2012) ("A trial court is vested with significant discretion when deciding whether to revoke a previously suspended sentence. . . . A new conviction certainly constitutes good cause to revoke the suspension of a previously imposed sentence.") (citing *Slayton v. Commonwealth,* 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946)).   So too have federal courts, including courts within this district.   *See Grueninger v. Dir.*, No. 3:15CV169, 2016 WL 438974, at *3 (E.D. Va. Feb. 3, 2016) ("This federal habeas corpus court may not revisit that determination of state law.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68

25

(1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).

Notably, Petitioner does not contest that he was convicted of grand larceny in Stafford County Circuit Court (the conviction that formed the basis of the Trial Court's decision to revoke a portion of Petitioner's suspended sentence). *See* ECF No. 1, *passim*; ECF No. 9, *passim*. *See also* ECF No. 1 at 81 (Petitioner explaining that he "recognizes he was sentenced to time for crimes that he did commit."). Petitioner similarly does not, and cannot, contest that the Trial and Sentencing Order entered by the Trial Court on June 21, 2011 provided the following: [t]he Court **SUSPENDS 19 years, 6 months** of the sentence, for a period of **20 years**, upon the following condition(s): **Good Behavior.** The defendant shall be of good behavior for **20 years** upon the defendant's release from confinement and/or until all fines and costs are paid in full." Trial Court Record at 80-81 (emphasis in original). Accordingly, Petitioner's grand larceny conviction clearly violated the condition that Petitioner "be of good behavior for 20 years upon [his] release from confinement," and the Trial Court was well within its power to revoke a portion of the previously suspended sentence.[13] *See Booker v. Commonwealth*, 61 Va. App. 323, 338, 734 S.E.2d 729, 736 (2012) (refusing to find that the court abused its discretion in revoking the defendant's previously suspended sentence when "[a]biding by federal and state law was specifically listed as a condition of appellant's suspended sentence.").

---

[13] Indeed, Petitioner may well have received a *longer* sentence if not for the mitigation offered by his Trial Counsel, based on the large number of larceny convictions in Petitioner's criminal record and the frequency with which he accrued them. *See* Transcript of September 24, 2013 Hearing at 7-8 (Trial Counsel: "Your Honor, as I said earlier, sometimes there is a punishment greater than what you can exact. In this case it has to be knowing that you put yourself in jail and knowing that your mother was sick and you weren't there to say goodbye to her. That's excruciating, Your Honor. He has to live with that every day for the rest of his life. We would ask the court based on the time he has already been given thus far, to please take that into consideration when determining how much of his current sentence to revoke."). *See also Strickland v. Washington*, 466 U.S. 668, 685 (1984) (holding that constitutional claim of ineffective assistance requires showing of reasonable probability that but for counsel's deficient performance, outcome of proceeding would have been different).

Accordingly, any claim based on the ineffective assistance of either Trial or Appellate Counsel for failure to explore such frivolous grounds is equally without merit. *See Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (explain that the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance") (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added); *Herrington v. Clarke*, 699 F. App'x 158, 161 (4th Cir. 2017) ("Although 'it is difficult to demonstrate that counsel was incompetent' in his choice to present one appellate issue rather than another, a defendant may prove that his counsel's performance was deficient by showing that 'a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief.'" (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000); citing *Davila v. Davis*, 137 S.Ct. 2058, 2067 (2017) (**"Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."**)) (emphasis in original). Additionally, the viability of any ineffective assistance claims regarding Appellate Counsel is especially unlikely given Appellate Counsel's filing of an *Anders* brief in both the Court of Appeals and the Supreme Court of Virginia, a process which, by definition, required the appellate courts to perform an independent review of the proceedings to confirm the absence of any legal issues arguable on their merits. *See* ECF No. 1 at  35 (""The [Court of Appeals of Virginia] has reviewed the petition for appeal, fully examined all of the proceedings, and determined the case to be wholly frivolous for the following reasons . . ."); *id.* at 61 ("The [Supreme Court of Virginia], finding that counsel has complied with the requirements of *Anders v. California*, 386 U.S. 738 (1967) . . . [and] upon further consideration of the entire record, finds no legal issues arguable on their merits and therefore refuses the petition for appeal.").

In sum, the undersigned **FINDS** that in addition to being untimely and procedurally defaulted, Petitioner's substantive claims lack merit.

### III.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### IV.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and to counsel for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 14, 2018